**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Life Pharmanaturals LLC, et al., | No. CV-26-00235-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Dymatize Enterprises LLC, | |
| Defendant. | |

Plaintiffs Lisa Finder and Best Life Pharmanaturals LLC bring claims against Dymatize Enterprises LLC arising from the parties' former nutraceutical-manufacturing relationship and an alleged 2018 assault by a Dymatize employee. Dymatize moves to dismiss all claims on a variety of bases, including untimeliness. Because plaintiffs have not plausibly alleged delayed accrual or tolling, the current claims are dismissed as untimely. The court does not reach the other grounds presented in Dymatize's motion.

## I.   Background

Best Life Pharmanaturals LLC ("BLP") is an Arizona nutraceutical manufacturing company founded by Lisa Finder. (Doc. 1-1 at 4, 7.) At all relevant times, Finder was BLP's sole member and manager, and the only person with authority to make decisions on BLP's behalf. (Doc. 1-1 at 4, 7.) In July 2017, Dymatize approached BLP about developing an L-Carnitine liquid supplement. (Doc. 1-1 at 5, 7–8.) In June 2018, they entered into an agreement (Doc. 7-3) under which BLP would manufacture and package BLP's L-Carnitine products using Dymatize's branding. (Doc. 1-1 at 5, 8.)

The parties' relationship deteriorated later in 2018. In October 2018, plaintiffs allege Dymatize employees began interfering with BLP's ability to fulfill purchase orders, including by giving unauthorized instructions to BLP employees. (Doc. 1-1 at 9.) Then, in November 2018, a Dymatize employee allegedly lured Finder to his hotel room under false pretenses before physically and sexually assaulting her. (Doc. 1-1 at 9.) Finder alleges the assault caused her to develop serious health problems, including Cushing's Syndrome, amnesia, and neurological damage. (Doc. 1-1 at 5–6, 9.) Those conditions allegedly prevented Finder from functioning in her daily life and rendered her incompetent to make informed decisions. (Doc. 1-1 at 6.) Finder underwent several surgeries and therapeutic treatments and has needed extensive caretaking from her adult daughters. (Doc. 1-1 at 11.) Plaintiffs allege Finder's condition left BLP effectively unable to operate or manage its affairs because she was BLP's sole member and decisionmaker, eventually resulting in the closure of the business. (Doc. 1-1 at 4, 7, 10–11.)

In January 2019, Dymatize and BLP entered a "Compromise and General Release of All Claims" to resolve disputes arising from their business relationship. (Doc. 7-4 at 2.) Under the Release, BLP discharged Dymatize from all claims arising from or relating to the parties' business relationship as of January 16, 2019, including unknown and unanticipated claims. (Doc. 7-4 at 2–3.) In exchange, Dymatize agreed to pay BLP $75,000 immediately and $1 per bottle for the next 75,000 bottles. (Doc. 7-4 at 3.) The Release laid out how the parties would divide their intellectual property in the future. (Doc. 7-4 at 3.) It also stated no promises or inducements had caused the parties to sign other than those expressly included in the agreement and the Release represented their full and final agreement on its subject matter. (Doc. 7-4 at 4–5.) Finder signed the Release on BLP's behalf as its CEO and managing member. (Doc. 7-4 at 5–6.) Plaintiffs allege Dymatize nevertheless fraudulently induced BLP to execute the Release and stopped purchasing products from BLP immediately afterward. (Doc. 1-1 at 6, 10–11.)

During the same seven-year period in which Finder allegedly was unable to manage her affairs or understand her legal rights, she actively participated in multiple lawsuits

involving parties other than Dymatize.[1] In March 2019, Finder filed an answer in state court, admitting and denying allegations and asserting an affirmative defense. (Docs. 8-1; 8-2.) In August 2019, acting pro se, she moved to dismiss breach-of-lease and breach-of-guaranty claims against her. (Docs. 8-3; 8-4.) In June 2023, again acting pro se, she filed an answer and counterclaim in another state-court case. (Docs. 8-5; 8-6.) A few months later, she filed an answer and counterclaim on behalf of a corporate defendant. (Doc. 8-7.) In November 2023, acting pro se, Finder filed an amended answer with counterclaims (Doc. 8-8) and submitted a sworn affidavit alongside her statement of facts (Doc. 8-9 at 6–7). In another case, from 2023 through 2025, she filed an answer, counterclaims, oppositions to a motion to dismiss, a summary judgment motion, a motion for bifurcation, and a motion to reduce an attorneys' fees award. (Docs. 8-10; 8-11; 8-12; 8-13; 8-14; 8-15.) In another separate proceeding (*see* Docs. 8-16; 8-17; 8-18; 8-19; 8-20), Finder also opposed a request for a Rule 35 mental examination. (Doc. 8-19 at 4.)

In July 2025, Finder underwent a surgery that allegedly helped her "once again become capable of managing her day-to-day affairs." (Doc. 1-1 at 11, 16–17.) Shortly afterward, Finder discovered Dymatize had continued selling highly-concentrated L-Carnitine products after the parties' relationship ended. (Doc. 1-1 at 11.) She alleges those products could only have been made using BLP's proprietary production process. (Doc. 1-1 at 11.) Plaintiffs allege Dymatize primarily sold those products outside the United States, which prevented its conduct from being discovered earlier. (Doc. 1-1 at 6.)

Plaintiffs filed this action in Arizona state court on December 5, 2025, and Dymatize later removed it to this court. (Doc. 1 at 2.) BLP asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, misappropriation of trade secrets, and fraudulent inducement. (Doc. 1-1 at 12–15.) Finder asserts claims for assault and battery against Dymatize under a vicarious-liability theory.

---

[1] Dymatize asks the court to take judicial notice of Exhibits 1–20, which consist of docket sheets and filings from state-court proceedings involving Finder. (Doc. 8 at 2–5.) The court takes notice that those documents were filed, when they were filed, and the positions Finder asserted in them, but not the truth of any disputed factual assertions they contain. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

(Doc. 1-1 at 15–17.)

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

A complaint may be dismissed on limitations grounds only when untimeliness is apparent on the face of the complaint. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). "If it appears on the face of the complaint that an action may be barred by limitations, the burden is on the plaintiff to establish that the statute has been tolled." *Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 925 (Ariz. 2024) (simplified). When deciding a motion to dismiss, the court may consider the complaint, documents incorporated by reference, and matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III.   Analysis

Dymatize moves to dismiss all claims as untimely. (Doc. 7.) Dymatize identifies the limitations period applicable to each cause of action, and plaintiffs do not dispute all claims are untimely absent delayed accrual or tolling. (Docs. 7 at 6–8; 12 at 2–7; 14 at 3–4.) But plaintiffs argue tolling or delayed accrual should apply. (Doc. 12 at 3–7.)

### A.  Discovery Rule

Under Arizona law, a claim generally accrues, and the limitations period begins to run, "when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995). The discovery rule can delay accrual until

"the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). But a plaintiff need not know all facts underlying the claim. *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002). It is enough that the plaintiff has sufficient information to identify that a wrong occurred, that it caused injury, and who was responsible in a way that would put a reasonable person on notice to investigate. *Id.*; *Doe*, 955 P.2d at 961. A complaint must accordingly allege facts showing what reasonable diligence was exercised and adequately explain why the claim nevertheless could not have been discovered sooner; a conclusory assertion of later discovery is insufficient. *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010); *see also Cavan v. Maron*, 182 F. Supp. 3d 954, 962–63 (D. Ariz. 2016). BLP argues the discovery rule should delay accrual of its contract and fraud claims. (Doc. 12 at 7.)

Finder allegedly did not discover until September 2025 that Dymatize had continued selling L-Carnitine products using BLP's proprietary process. (Doc. 1-1 at 6, 11.) The complaint does not allege how that discovery occurred, what Finder's investigation entailed, what facts revealed that Dymatize was using BLP's process, or why the alleged conduct—even if occurring overseas—could not have been uncovered earlier through reasonable diligence. Nor does it identify any investigative steps BLP took between 2019 and 2025, any obstacle that prevented such an investigation, or any affirmative act by Dymatize that kept otherwise-discoverable information from BLP. Even assuming foreign sales made detection more difficult, the complaint does not explain why reasonable diligence could not have uncovered them within the limitations periods or what changed in 2025 to suddenly make them discoverable. Because the discovery rule turns on when the alleged misconduct *reasonably* could have been discovered—not when BLP happened to discover it—those generalized allegations do not meet BLP's burden of showing the discovery rule applies. *See id.; see also Cavan*, 182 F. Supp. 3d at 963.

## B. Unsound Mind

Plaintiffs also proffer an unsound-mind theory to support their tolling argument. (Doc. 12 at 2–7.) The governing Arizona statute titled "Effect of minority or insanity"

states "[i]f a person entitled to bring an action . . . is at the time the cause of action accrues either under eighteen years of age or of unsound mind, the period of such disability shall not be deemed a portion of the period limited for commencement of the action." A.R.S. § 12-502. Plaintiffs argue this statute applies to the claims of both BLP and Finder based on Finder's alleged incapacity.

Beginning with BLP, plaintiffs argue business entities qualify as "persons" under § 12-502 because the general statutory definition of "person" includes natural persons and business entities.[2] (Doc. 12 at 3 (citing A.R.S. § 1-215(29)).) But that statutory definition of "person" applies "unless the context otherwise requires." A.R.S. § 1-215. The Arizona Court of Appeals recently addressed an analogous issue in a case involving Arizona's homestead exemption. *Orozco Inv. Co. v. Houseopoly, LLC*, No. 2 CA-CV 2025-0013, 2026 WL 456028, at *3 (Ariz. Ct. App. Feb. 18, 2026). The relevant statute made the exemption available to "[a]ny person the age of eighteen or over." *Id.* (simplified). Rejecting an investment company's attempt to claim the homestead exemption based on the general definition of "person" in Arizona law, the court held: "To apply the general definition of 'person' under § 1-215 here would result in absurdity—for example, requiring a corporation to be 'at least eighteen years of age' before it could claim the exemption." *Id.*; *see also Windhurst v. Arizona Dep't of Corr.*, 536 P.3d 764, 770–71 (Ariz. 2023) (holding that, despite § 1-215(29)'s general definition, statutory context limited "person" to natural persons because a legal entity cannot hold an individual professional license).

The same absurdity would exist here under plaintiffs' reading. Section 12-502 addresses two disabilities—minority and unsound mind—that are attributes of natural persons, not artificial entities. A business entity has a date of formation, but it does not pass through childhood or acquire legal competence only on its eighteenth birthday. Nor can it suffer cognitive impairment, lose the ability to understand its rights, or recover its sanity when management changes. Plaintiffs' reading would treat every newly-formed entity as a

---

[2] Plaintiffs do not provide any convincing argument why BLP's mental state would be determined by looking to Finder's. Arizona law is clear that "[a] limited liability company is an entity distinct from its member or members." A.R.S. § 29-3108(A). The court need not resolve this issue because § 12-502 does not apply to LLCs.

minor, give a seventeen-year-old LLC an additional year of tolling unavailable to an otherwise-identical eighteen-year-old LLC, and require courts to decide whether managerial dysfunction, poor business judgment, or insolvency constitutes an unsound mind. Section 12-502 cannot reasonably bear that meaning, so in this context, "person" must refer only to a natural person capable of experiencing the disabilities the statute describes. BLP cannot rely on the statute to toll its claims.

Section 12-502 could potentially apply to the two claims Finder pursues on her own behalf. The statute's standard is quite demanding. A person is of unsound mind if she is unable to manage her affairs or unable to understand or pursue her legal rights. *Doe*, 955 P.2d at 963–64; *Allen v. Powell's Int'l, Inc.*, 518 P.2d 588, 589 (Ariz. Ct. App. 1974). The plaintiff bears the burden of "set[ting] forth specific facts . . . supporting the conclusion of unsound mind." *Doe*, 955 P.2d at 964.

Finder's allegations do not plausibly establish the extraordinary incapacity § 12-502 requires. First, the judicially-noticed court filings doom Finder's contention that she was unable to understand or pursue her legal rights. Filing numerous legal claims and submitting substantive court filings over a multiyear period—as Finder did repeatedly during her alleged period of incapacity—is inconsistent with being unable to understand one's legal rights. *See Cecala v. Newman*, 532 F. Supp. 2d 1118, 1152–53 (D. Ariz. 2007) (holding plaintiff's efforts to obtain counsel, conduct legal research, and prosecute arbitration and litigation contradicted her claimed inability to understand legal rights); *Wauneka v. Ryan*, No. CV-14-0036-PHX-GMS-JZB, 2015 WL 5720389, at *6–7 (D. Ariz. June 12, 2015), *report and recommendation adopted sub nom. Wauneka v. Charles L. Ryan*, No. CV-14-00036-PHX-GMS, 2015 WL 5693528 (D. Ariz. Sept. 29, 2015) (same).

The ability to understand legal rights does not necessarily resolve the separate question whether Finder could manage her daily affairs. *See Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 772–73 (D. Ariz. 2012). But this alternative ground requires incapacity far beyond serious medical conditions or difficulty conducting normal daily activities: the plaintiff must be essentially "incapable of carrying on the day-to-day affairs of human

existence." *Nolde v. Frankie*, 964 P.2d 477, 482 (Ariz. 1998) (quoting *Florez v. Sargeant*, 917 P.2d 250, 255 (Ariz. 1996)). The complaint alleges Finder suffered amnesia and neurological damage, underwent several unspecified medical procedures, and required "extensive caretaking" from her daughters "just to maintain her life." (Doc. 1-1 at 5–6, 9, 11.) But those allegations are far too generalized: the complaint does not identify what care her daughters provided, a single basic activity Finder could not perform, any ordinary decision she could not make, whether she could live independently, or the dates and duration of any functional limitation. Nor does it explain what the July 2025 surgery treated or how that procedure supposedly suddenly restored her ability to manage daily affairs. Those generalized allegations do not plausibly show that Finder was incapable of carrying on the ordinary affairs of human existence. *See Cecala*, 532 F. Supp. 2d at 1149–50 (holding that difficulty performing everyday tasks because of a fragile mental state did not satisfy the unsound-mind standard).

In addition, Finder's pro se filings—even without relying on the substance of their contents—demonstrate at least some capacity to manage her affairs during the alleged period of incapacity. (*See* Docs. 8-4; 8-6; 8-7; 8-8; 8-11; 8-14; 8-15.) Preparing and filing a pro se motion to dismiss (Doc. 8-4), pro se answers and counterclaims (Docs. 8-6; 8-7; 8-8; 8-11), a pro se motion for bifurcation (Doc. 8-14), and a motion to reduce an attorneys' fees award (Doc. 8-15) suggests some ability to manage one's own affairs, given that preparing documents requiring such complex thought would prove very difficult for a highly-incapacitated individual. For comparison, although the *Tavilla* plaintiff understood his legal rights, third-party declarations concretely described his inability to get out of bed, go to the bathroom, take care of his hygiene, or attend medical appointments, creating a factual dispute as to his ability to manage his affairs at the summary-judgment stage. 870 F. Supp. 2d at 772–73. Here, Finder presents no comparable detail about what care she required, what tasks she could not perform, or how long any functional limitations lasted, and the pro se filings indicate an ability to manage at least some daily affairs.

Finder's generalized allegations therefore do not plausibly establish that she

suffered from either an inability to understand and pursue her legal rights or an inability to carry on the ordinary affairs of human existence. That conclusion is reinforced by her extensive substantive participation, including in a pro se capacity, in litigation throughout the same period in which she allegedly lacked capacity. Therefore, the current complaint does not support tolling under § 12-502 and is dismissed.

### C. Leave to Amend

All of the claims in this case have been dismissed as time-barred. For those as to which BLP only claimed tolling under A.R.S. § 12-502, leave to amend would be futile and is denied. *See, e.g.*, *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 & n.20 (9th Cir. 2003) (amendment would be futile where claim was time-barred). But because BLP argued the discovery rule applied to its "contract and fraud" claims (Doc. 12 at 7), those claims may be amended. This leave to amend applies only to those claims and only permits BLP to add allegations showing why the discovery rule applies.

As to Finder, she may amend only to add allegations showing she was unable to manage her ordinary daily affairs for purposes of § 12-502. Amendment appears unlikely to cure the deficiencies identified in this order while still meeting the *Twombly*/*Iqbal* plausibility standard, but the court cannot conclude at this stage that permitting it would be futile. If Finder chooses to amend, plaintiffs' counsel should keep several concerns in mind.

First, in addition to curing the deficiencies already described in this order, any amendment should address another possibly-fatal defect the court has identified. Under A.R.S. § 12-502, the plaintiff must be of unsound mind "at the time the cause of action accrues." *See Kopacz v. Banner Health*, 425 P.3d 586, 590 (Ariz. Ct. App. 2018). Once the limitations period begins to run, it continues notwithstanding a later-arising disability. A.R.S. § 12-503. Finder's assault and battery claims arise from the alleged 2018 assault. But the current complaint alleges she "began experiencing" health problems only "[a]fter" and "in the wake of" the assault. (Doc. 1-1 at 5–6, 9; *see also* Doc. 1-1 at 5 ("The assault . . . caused her to develop several health problems").) Those allegations raise a serious question whether any qualifying incapacity existed *when* Finder's claims accrued, as

opposed to developing later, and any amended complaint may not allege facts that contradict an earlier pleading. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).

Second, the court has made clear its skepticism that Finder can ultimately prove she was unable to manage her ordinary daily affairs based on the fact of her filing complex legal documents pro se. That conclusion rests only on judicially-noticeable facts such as the type of filing and who filed them, not the truth of any assertions they contain. *See Khoja*, 899 F.3d at 999. But in filing an amended pleading, counsel would represent to the court under Rule 11(b)(3) that "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The contents of some of Finder's state-court filings create serious questions as to whether this standard could be met. (*See, e.g.*, Docs. 8-13 at 12-15 (as of September 2024, Finder was the landlord of a property she leased to the Native American Fatherhood and Families Association); 8-13 at 38-40 (Finder sent text messages calculating amounts tenants owed her and applied to be a Board Member of her Homeowners Association in August 2023); 8-17 at 5 (in pro se counterclaim, Finder describes using a dating app in April 2022).)

**IT IS ORDERED** the motion to dismiss (Doc. 7) is **GRANTED WITH LIMITED LEAVE TO AMEND**. An amended complaint, if any, must be filed no later than **July 24, 2026**, and attach a redlined version of the amended complaint that indicates how it differs from the original complaint. The Clerk of Court shall enter judgment in favor of defendants in the event no amended complaint is filed by that date.

Dated this 10th day of July, 2026.

_____
**Honorable Krissa M. Lanham**
**United States District Judge**